## Case No. 13,272a.

SRODES v. The COLLIER.

[9 Pittsb. Leg. J. 193; 2 Pittsb. Rep. 318; 4 West. Law Month. 120.]

Circuit Court, W. D. Pennsylvania. Dec., 1861.[1]

MARITIME LIENS — MORTGAGES — LOCAL LIENS — PRIORITIES—WAIVER—ASSIGNMENT —LIMITATIONS.

[1. The act of July 29, 1850, which requires every bill of sale, mortgage, hypothecation, or conveyance of a vessel to be registered or enrolled in order to have any validity as against a purchaser without notice, does not give a force or validity to a domestic mortgage, which it has not at the place of its execution.]

[2. A mortgage recorded under the act of 1850 must be postponed to liens for supplies, repairs, etc., under the statutes of Pennsylvania relating to the attachment of vessels.]

[3. By the express provisions of the Pennsylvania statutes relating to liens upon vessels, such liens are not lost by taking the notes of the owner for the amount thereof.]

[4. An admiralty court regards equitable claims with the same favor as a court of chancery, and will enforce claims for which liens are given, in the hands of an assignee, although the thing itself may not be legally assignable.]

[5. A bill of goods furnished to a boat, when in port, cannot be tacked to other bills, made more than two years before, for the purpose of saving the whole from the statute of limitations.]

[Appeal from the district court of the United States for the Western district of Pennsylvania.]

[These were appeals in admiralty from the judgment of the United States district court, of July 16, 1861 [Case No. 13,272], confirming the report of the commissioner, Mr. John H. Bailey, which report, with a full syllabus of the points ruled therein, was published in our paper of September 16, 1861, being No. 9, page 73, of this volume. That judgment being now affirmed in the circuit court, we need only to refer to our former publication for full statement of the questions of law decided.

GRIER, Circuit Justice. These cases involve the same questions, differing only in immaterial circumstances. The very able report of the master was confirmed by the district court. The exceptions to that report,

---

[1] [Affirming Case No. 13,272.]
22FED.CAS.—65

and the principles on which it is founded, are now to be considered:

1. The claim of the libellant, as pilot, was properly allowed. The attachment and lien creditors might have intervened as claimants, in the original suit, and contested the libellant's claim for wages against the vessel. But they have not done so. They are now, before us only ex gratia, on petition to have the remnant of the fund in the registry of the court delivered to them according to the order of their respective claims. The district court might have relieved itself of the trouble of distributing this surplus by ordering it to be delivered over to the sheriff, who had attached the vessels on domestic liens. But the proceedings in the state courts being withdrawn, the petitioners may call upon the court to appropriate the fund to those entitled to receive it. See Schuhardt v. Babbidge, 19 How. [60 U. S.] 239.

2. The chief complaint against the appropriation made by the master's report, is, that he has postponed the claims of the mortgagees to that of the other lien creditors. The act of assembly of 1836, relating to the attachment of vessels, subjected them to a lien for work done in repairing, furnishing and equipping them, &c.; but limited this lien or privilege to the commencement of her first voyage. On the 20th April, 1858, a supplement to this act was passed, applicable only to vessels navigating the rivers Allegheny, Monongahela, or Ohio, in this state, by which they are encumbered with liens for every possible debt or contract made concerning them. They are ranged into five classes, too large to be specially enumerated, and it is not necessary for the purposes of this decision. It is sufficient to say that all the debts claimed as liens, came within the act, except the mortgages. We need not speculate on the regard that would be paid to these secret domestic liens in a port of another state, or in case of a purchaser without notice at a foreign port. By this act these secret liens, with which the boat may be covered, have a life of two years given them, whether she remains within the state or home port or not. The maritime liens being first satisfied, the surplus in the registry of the court should be distributed to the parties having these liens, in their order.

By the law of Pennsylvania there can be no valid mortgage of a chattel unless possession accompanies the deed, and the act of 1858 gives him none. If the mortgagee were in possession he would be treated as owner and be personally liable for the debts of the boat. This act makes the boat debtor for everything done to or for her, and these liens would attach to the boat whether in his possession or that of the mortgagor. A mortgagee may take possession of the vessel by virtue of his deed, but till he does so he has neither a general nor a special property, any title to, or lien upon the boat. The act of congress of July 29, 1850 [9 Stat. 440], which requires every bill of sale, mortgage, hypothe-

cation or conveyance of a vessel, to be registered or enrolled, in order to have any validity as against a purchaser without notice, does not give force or validity to a domestic mortgage of a vessel which it had not by the law of the place where it was executed. The sole object of this act of congress is to protect purchasers against secret liens. Whether the hypothecations or liens given by this act of assembly could have any validity even here, as against a bona fide purchaser without notice, unless they had been registered according to the act of congress, we need not here decide. In many states a mortgage of a chattel is a valid security without possession. But to have any effect except inter partes, and those having notice, this act requires their registry. If it were not a valid lien or hypothecation by the state law, the act of congress gave it none. The registry of these mortgages consequently gave them no more effect than they had before. It was only notice to a purchaser that the mortgagee had no lien. The mortgagees in this case had no right to claim the money representing the boat till all just claims, which were debts of the boat, having a lien on it by virtue of this act of assembly, have been first paid and satisfied. The balance, given to the mortgagees, is given because, as between them and the owner, they would have a right to take possession of the boat, subject to the liens, and consequently may have the balance of the money representing her.

It is objected that many of these accounts, for which this boat was attached, had lost their lien in consequence of notes given by the owner, which were renewed from time to time but not paid. To this objection the fifth section of the act of assembly referred to is a complete answer, viz: "That the taking or receiving of any note, bill of exchange, or other writing, in settlement of a debt, comprehended in any of the above enumerated classes, shall in no wise invalidate the lien given by this act, but the same shall exist in full force and effect, as if no such note, bill of exchange or other writing had been given." Although the master of a vessel as such has no lien for his wages, by the maritime law, this act gives a preference "to all hands or persons employed" on a boat, whether as "master, clerk, or otherwise," consequently his wages as such master were properly allowed, for the three months. On these western rivers, a boat must be always under direction of a pilot, and in many cases, the pilot performs the functions of master, having a certain established rate of wages, for his services as pilot, and an addition thereto for his services as master. For the first, he may have his lien by the maritime law—for the latter, he has a preference by the local law to the extent of three months' wages. I see no reason why an assignee of any of these accounts for which a lien is given, may not have a right to stand in the place of his assignor. It is true the thing is not legally assignable, but a court of admiralty regards equitable claims with the same favor as a court of chancery.

The objection by the insurance companies is also overruled. There is nothing on the face of the report to show a mistake of law or facts, and nothing produced before this court to show error. The bills, bonds, notes, &c., enumerated in the third class of liens, must "have been signed and given in the name and for and on account of such ships," &c. The master very properly says that where "the note is the evidence of the contract which binds the boat, it should be specific and individual," and that "it is not enough to present a note of $1,000 with the allegation that it includes $200 for the insurance of the Collier." We see no error in this decision.

The exceptions to the decision of the master, with regard to the accounts of Fulton & Son, and of Irwin & Son, which were in part over two years old, are also overruled, for the reasons stated in the report—a bill of goods furnished to a boat, when in port in 1860, cannot be tacked to other bills, made in 1858, more than two years ago, to save the whole from the limitation of two years.

The judgment of the district court is therefore affirmed, and the clerk is ordered to pay the money in court, according to the report of the master.